### Helen H. Bradley, Appellee, v. Federal Life Insurance Company, Appellant.

### Gen. No. 17,995.

1. COURTS—*jurisdictional questions.* The appellate court has no power to consider constitutional questions.

2. PLEADING—*declaration or statement of claim.* Where plaintiff's statement of claim filed in the municipal court contains all the necessary elements of a common-law declaration, it is immaterial whether it be called a declaration or a statement of claim, and a motion to dismiss for want of a declaration is properly denied.

3. PLEADING—*requisites of declaration.* The general requisites or qualities of a declaration are, first, that it correspond with the process; second, that it contain a statement of all the facts necessary in point of law to sustain the action, and no more; and third, that these circumstances be set forth with certainty and truth.

4. INSURANCE—*when motion to strike statement of claim is properly denied.* In an action on an insurance policy, a motion to strike the statement of claim from the files on the ground that plaintiff

relies on a waiver of an admitted right of forfeiture and sets up no facts showing a waiver, is properly denied where it is alleged that several months after the overdue premium had been paid, "while the policy was in full force and effect," the assignor of defendant took the policy as collateral security on a loan and later assigned it to defendant who accepted, reinsured and guaranteed it.

5. INSURANCE—*effect of reinsurance.* Where one insurance company assigns a policy to another, the reinsurance contract operates only between the insurer and reinsurer and creates no privity of contract between the reinsurer and the person insured unless there is a provision in the contract whereby the reinsuring company assumes and agrees to perform the contracts of the insuring company.

6. INSURANCE—*statement of claim on reinsurance contract.* In an action on an insurance policy, where it is alleged in the statement of claim that by the terms of the reinsurance contract defendant agreed to reinsure the policies, assume all liabilities and pay all losses, and the premiums were thereafter paid to defendant, a motion to strike the statement of claim on the ground that it does not show consideration for the reinsurance contract is properly denied.

7. CONTRACTS—*for benefit of third person.* The party for whose benefit a simple contract is made may maintain an action on it though the consideration does not move from him.

8. PLEADING—*formal defect waived by subsequent pleading.* In an action on an insurance policy against the reinsuring company, the failure to allege consideration between the insuring and reinsuring company on the reinsuring contract is a formal defect which, though objected to by demurrer or motion, is waived by subsequently pleading to the declaration and going to trial upon the merits.

9. EVIDENCE—*printed circulars bearing facsimile signatures.* In an action on an insurance policy against the reinsuring company, printed circulars bearing facsimile signatures of defendant's officers, referring to the fact that policies of the original insurer had been transferred to defendant, are admissible.

10. EVIDENCE—*official reports of insurance company.* In an action on an insurance policy, official reports of defendant's officers required by law are admissible.

11. APPEALS AND ERRORS—*admission of incompetent evidence on trial by the court.* On a trial by the court without a jury, the admission of incompetent evidence is not ground for reversal if there is enough competent evidence in the record to sustain the findings, since it is presumed on appeal that the court considered the competent evidence only.

12. SPECIAL FINDINGS—*when not·error to refuse.* Under R. S. ch. 110, § 61, it is not error to refuse to consider special findings of fact submitted after the case is taken under advisement.

13. INSURANCE—*forfeiture for nonpayment of note given for premium.* In the absence of any stipulation with reference to forfeiture for nonpayment of a note given for premium, the premium is regarded as paid by the note, and default in payment of the note does not forfeit the insurance.

14. INSURANCE—*when loan is made on policy after premium is due.* Where an insurance company loans money on a policy after the notes given for premium are due, there is a recognition that the policy is still in force.

15. INSURANCE—*when policy is not forfeited by nonpayment of notes.* Where an insurance company, after receiving a note in payment of a premium writes, "this note will give you an extension of time in which to pay in cash the semi-annual premium due on your policy," this letter does not have the effect of making the policy void in the event the note is not paid at maturity, when by a subsequent course of dealing the company recognizes the policy as still in force.

16. APPEALS AND ERRORS—*appeal for delay.* Statutory damages are not assessed against appellant on the ground that an appeal is prosecuted for delay where there is room for reasonable difference of opinion as to the questions of law involved, and nothing in the record to warrant a conclusion that the appeal was prosecuted in bad faith and solely for delay.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM W. MAXWELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed April 3, 1913. Rehearing denied April 17, 1913.

CHARLES A. ATKINSON and JOSEPH P. MAHONEY, for appellant.

SHERIFF, DENT, DOBYNS & FREEMAN, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a judgment for $5231.66, entered by the Municipal Court, in an action brought by appellee against appellant on a policy of life insurance originally issued by the Inter-State Life Assurance Company, of Indianapolis, Indiana, on June 29, 1902, to Charles Bradley, the husband of appellee,

and reinsured and guaranteed on December 31, 1909, by appellant. The case was tried before the court without a jury, and numerous alleged errors are assigned.

The suit was begun as a first-class case, and appellee filed, instead of a common-law declaration a "plaintiff's statement of claim" in accordance with rules 14 and 15 of that court, which provide that the pleadings in first-class cases shall be the same as in cases of the fourth-class, and that in first-class cases the plaintiff shall file in lieu of a declaration, a statement of claim which shall consist of a "statement of the account, or of the nature of the demand, and shall contain such further information as shall reasonably inform the defendant of the nature of the case he is called upon to defend." These rules are not set out in the bill of exceptions. Defendant's counsel interposed a motion to dismiss the suit for failure on the part of the plaintiff to file a formal declaration, which motion was denied. It is claimed that the motion should have been allowed. It is insisted that this court cannot take judicial notice of the rules of the Municipal Court, even though the Municipal Court Act distinctly so provides, for the reason, it is said, that the section requiring appellate courts to take judicial notice of such rules is unconstitutional. This court has no power to determine that question, but must take the statute as we find it. It is also urged, apparently in anticipation of the refusal of this court to consider constitutional questions, that section 20 of the Municipal Court Act, authorizing that court to make rules regulating the practice in that court, has no application to *pleadings,* because, it is said, there is an essential difference between pleadings and practice; that the term "pleadings" refers to "the allegations made by the parties for the purpose of definitely presenting the issue to be tried," while "practice" is defined as "the form, manner and order of conducting and carrying on suits." Bouvier, Law Dictionary.

We do not find it necessary to follow this argument or to decide the point, for the reason that the plaintiff's statement of claim as filed in this case contains all the necessary elements of a common-law declaration, and therefore, it is immaterial whether it be called a declaration or a statement of claim. Chitty defines a declaration to be a "specification in a methodical and legal form of the circumstances which constitute the plaintiff's cause of action, which necessarily consists of the statement of a legal right * * * and of an injury to such right remediable at law by action, as distinguished from the remedy by bill in equity." 1 Chitty Pl. (16th Am. Ed.) 264. The same author, on the same page, says: "The general requisites or qualities of a declaration are, 1st, that it correspond with the process; 2dly, that it contain a statement of all the facts necessary in point of law to sustain the action, and no more; and, 3dly, that these circumstances be set forth with certainty and truth." The plaintiff's statement of claim, as here filed, corresponds with the process and states, in substance, that about the year 1903, the Inter-State Life Assurance Company entered into a written contract with Charles Bradley, the husband of plaintiff, said contract being the kind commonly known as a life insurance policy, and numbered 7508 by said company, whereby said company, in consideration of the payment to it of a semi-annual premium of $76.20, on June 18th and December 18th in each year, agreed to pay to the plaintiff, within sixty days after the death of said Charles Bradley and upon the receipt of satisfactory proofs of death, the sum of $5000, and in addition thereto, a sum known as the cash value of said policy; that said policy provided that thirty days' grace would be allowed for the payment of premiums; that the premium due on said policy on June 18, 1909, was paid on July 29, 1909; that on October 25, 1909, "while the policy was in full force and all premiums had been fully paid to the next succeeding date for the payment of pre-

miums," said Inter-State Company made a loan of $370 to said Charles Bradley for ninety days, and as collateral security therefor took possession of said policy, and still holds possession of the same and refuses to furnish plaintiff with a copy thereof; that on December 31, 1909, said Inter-State Assurance Company assigned said policy, with other policies and contracts of life insurance, to the defendant, and that defendant "accepted, reinsured and guaranteed" the same, and notified Bradley to that effect, and notified him further that his said policy would thereafter be known as number 19600 in said defendant company; that said Bradley acquiesced in said assignment, reinsurance and guaranty; that Bradley died on January 17, 1910, and on January 26, 1910, complete proofs of death in writing were delivered to and received by the defendant; that defendant has not paid the amount due on said policy or any part thereof, but has refused so to do; by reason whereof, defendant is indebted to the plaintiff in the sum of at least $5037, for which, and for the full amount due to her by said contract, she sues. This statement seems to comply with Chitty's definition of a declaration. It contains a methodical specification of the circumstances which constitute the plaintiff's cause of action, and we see nothing illegal in its form. It states a legal right of the plaintiff, and an injury thereto by the defendant, remediable by action at law. It is true that it does not use the precise phraseology of the time-worn precedents, but nevertheless, or perhaps for that reason, there cannot be the slightest doubt as to its meaning. We are of the opinion that the court did not err in denying the motion to dismiss for want of a declaration, even if it be assumed that the rules of the common law, instead of those of the Municipal Court, are still in force in first class cases.

After the motion to dismiss had been denied, defendant's counsel made a further motion to strike the statement of claim from the files, upon the alleged

ground that it appears from the plaintiff's statement that she relies upon a waiver of an admitted right of forfeiture and that the statement of claim sets up no facts showing a waiver. The trial court denied the motion, and error is assigned upon this ruling. As above shown, the statement alleges that the premium due in June, 1909, was paid and although the date given for such payment is a date subsequent to the expiration of the time agreed on, yet the statement further alleges that several months later, "while the policy was in full force and effect," the Inter-State Company loaned $370 to Bradley, and took the policy as collateral security, and still later, and before the next payment was due, assigned the policy to defendant, who accepted, reinsured and guaranteed it and notified Bradley to that effect. These allegations are sufficient, in our opinion, as a statement of facts amounting to a waiver of the right of forfeiture, or an estoppel to assert that right, if any such right had accrued.

The statement of facts is further objected to upon the ground that it contains no statement of any consideration for the reinsurance contract, either as between the plaintiff and defendant, or as between the defendant and the Inter-State Life Assurance Company. In support of this objection it is urged that a reinsurance contract ordinarily operates only as between the insurer and the reinsurer, and creates no privity of contract between the reinsurer and the person insured. This is undoubtedly the general rule as to ordinary reinsurance contracts, provided there is no provision in the contract by which the reinsuring company assumes and agrees to perform the contracts of the insuring company. Vial v. Norwich Union Fire Ins. Soc., 257 Ill. 355. In this case, however, the statement alleges, and the proof shows, that by the terms of the reinsurance contract, defendant not only agreed to reinsure the policies issued by the Inter-State Company, but in effect it assumed all

liabilities upon such policies and agreed to pay all losses directly to the policy holders. The language of the reinsurance contract is, in part, as follows: ''In consideration of the foregoing and of the sundry covenants and agreements therein contained, the 'Federal' accepts said transfer to it of said policies and securities, and hereby reinsures, as of the time when this contract goes into effect, all the then living policy holders of the said 'Inter-State' whose policies' are then in force in said 'Inter-State,' *and said 'Federal' assumes and guarantees the said policies of said living policy holders, in accordance with the terms and conditions of said policies respectively,* the future premiums on said policies to be paid to the 'Federal.' '' The substance of this clause of the contract is set forth in the statement of claim. In Bristow v. Lane, 21 Ill. 194, the plaintiff, Lane, declared upon a contract entered into between one Moses Clampit and the defendants, by the terms of which, in consideration that Clampit would convey to the defendant certain real estate, the defendants undertook and promised to pay the debts of Clampit; and it was averred that Clampit did convey such real estate and that thereby the defendants became liable to Lane for the payment of an indebtedness due to him from Clampit. Upon a demurrer to the declaration it was contended that Lane could not sue upon said contract for the reason that no privity was shown between the defendants and Lane, who, it was urged, was a stranger to the consideration. The court held that the declaration stated a good cause of action, upon the principle that ''in simple contracts, the person for whose benefit the promise is made may maintain an action in his own name upon it, although the consideration does not move from him;'' and also held that by the act of bringing suit, Lane affirmed, or consented to, the act of Clampit in making the contract with the defendants, citing with other cases, Eddy v. Roberts, 17 Ill. 505.

As to the point that no consideration is averred for the reinsurance contract, as between the two insurance companies, the defect, if any, is a merely formal one (Lowden v. Wilson, 233 Ill. 340) which, even though it be objected to by demurrer or motion, is waived by subsequently pleading to the declaration and going to trial upon the merits. Illinois Cent. R. Co. v. Patterson, 69 Ill. 650. The proof shows that the consideration was the transfer to the defendant of divers securities mentioned in the contract, and there is uncontradicted evidence to the effect that such securities were in fact transferred to the defendant, as agreed.

Many points are raised regarding alleged errors in the admission and exclusion of evidence. We do not deem it necessary to discuss each of these points in detail. The point about which most complaint seems to be made is that the court erred in admitting in evidence certain printed circulars, some of them bearing the facsimile signatures of the officers of the Inter-State Company, and others bearing the facsimile signatures of defendant's officers, both referring to the fact that the insurance policies of the Inter-State Company had been transferred to the defendant and reinsured and guaranteed by the latter. In one of such circulars, although not addressed to Bradley by name, it was stated, in substance, over the printed facsimile signatures of defendant's officers, that policy No. 7508 in the Inter-State Company, which was the number of the Bradley policy, would be known thereafter as "Federal No. 19600," and that all premiums thereon should be remitted directly to the home office of the defendant. These letters or circulars were objected to because there was no proof of their authenticity. Such printed letters or circulars, sent broadcast to policy holders, and shown to have been received by one of them, were held admissible in U. S. Life Ins. Co. v. Ross, 159 Ill. 476; and for the reasons stated in the opinion in that case, we think they were properly admitted in evidence in this case. Official reports of de-

fendant's officers, required by law, were also offered in evidence. Upon the authority of Aetitus v. Spring Valley Coal Co., 246 Ill. 32, we think these reports were likewise admissible. It may also be added, as to these and similar objections raised by counsel, that in cases tried by the court without a jury, the rule is that the admission of incompetent evidence will not, of itself, be held to be ground for reversal, if there is enough competent evidence in the record to sustain the findings of the court, since it will be presumed on appeal, that the court considered the competent evidence only. Knight v. Collings, 227 Ill. 348.

It is next urged that the court erred in refusing to make certain special findings of fact submitted by defendant's counsel. The certificate of the trial judge in the bill of exceptions shows that these special findings were not submitted until after the case had been taken under advisement, and for this reason, the court declined to mark them either "held" or "refused." There was no error in the refusal of the court to consider them, under such circumstances. Hurd's Rev. Stat. Ill. chap. 110, sec. 61.

It appeared from the evidence that on July 29, 1909 (forty-one days after the semi-annual premium was due), Bradley gave, and the Inter-State Company accepted, his note for the amount due, with interest, payable on October 18, 1909. On October 25, 1909, when the loan of $370 was made, Bradley paid $50 on this note, and gave a new note for the balance ($27.52), payable on November 25, 1909. The last note was never paid. The next premium was due December 18, 1909, with thirty days' grace, making it payable January 17, 1910, the same day on which Bradley died. Under these facts, it is insisted that the court erred in refusing to hold as law the tenth proposition of law submitted to the court by appellant's counsel and marked "refused." That proposition, in substance and effect, was that the giving of a note by the insured for part of the amount of an insurance pre-

mium is not a payment of the premium in the absence of any proof that it was delivered to and received by the insurer as payment, but is to be construed merely as evidence of an extension of the time of payment until the date of the maturity of the note, and that in such case, a failure to pay the note at maturity is a failure to pay the premium when due. The authorities upon this question are not entirely harmonious; but after a study of such authorities as have been cited, and as we have been able to find, we think that the following statement found in 25 Cyc. 826, is a correct statement of the general rule: "By the weight of authority, in the absence of any stipulation with reference to forfeiture for nonpayment of a note given for premium, the premium must be regarded as paid by the note, and default in payment of the note will not forfeit the insurance." In Mutual Life Ins. Co. of New York v. Allen, 212 Ill. 134, the court said (p. 144): "In the absence of proof of a clause in the policy providing the policy shall be void in the event the premium is not paid at maturity of a note or notes taken for the premium, default in the payment of the note will not work a forfeiture of the policy. 19 Am. & Eng. Ency. of Law (2nd Ed.) 47 and notes; U. S. Life Insurance Co. v. Ross, 159 Ill. 476; May on Insurance (2nd Ed.) sec. 87." The policy offered in evidence in this case contains no such clause. It seems to have been the habit of the officers of the Inter-State Company to accept such notes from Bradley, as the premiums fell due, and after receiving such a note, to write him a letter telling him that "this note will give you an extension of time in which to pay in cash the semi-annual premium due on your policy" to the date of the maturity of the note. The notes themselves, however, did not contain any such statement, but were negotiable instruments. Seven days after the July note was due, the Company loaned Bradley $370 upon the policy, when, if the present contention of appellant's counsel is correct, the policy was null

and void. Part of the note was then paid and a new note was given for the balance. This was a clear recognition, by the company, that the policy was still in full force. Over a month after this last note was due, the Company made a formal assignment of the policy to the defendant, who reported it as among its existing policies to the State insurance officers, and notified Bradley that it would be thereafter known as No. 19600. In view of all these facts, if any effect is to be given to the "course of dealing" between the parties, as is now strenuously insisted by appellant's counsel, it must, we think, be held that such "course of dealing" clearly negatives the claim that the letters above mentioned can take the place of a specific clause in the policy or note providing that the policy shall be void in the event the note is not paid at maturity. Forfeitures are not favored in the law. There was no claim that either the defendant or the Inter-State Company returned or offered to return the note given for the premium. On the contrary, they retained it evidently as an asset. It would be highly inequitable and unjust to permit the Company to retain the premium note and treat it as an existing obligation, and at the same time repudiate its liability under the insurance contract.

All of the remaining contentions are substantially covered by what has been said. A motion has been interposed by appellee, asking that statutory damages be assessed against appellant upon the ground that it appears that the appeal was prosecuted for delay. We are not satisfied that such is the fact. There is room for reasonable difference of opinion as to the questions of law involved, and we see nothing in the record to warrant us in concluding that the appeal was prosecuted in bad faith and solely for delay. The motion will therefore be denied.

Finding no reversible error in the record, the judgment of the Municipal Court will be affirmed.

*Affirmed.*