### William H. McMicken *et al.*

*v.*

### Helen M. Safford.

*Opinion filed June 19, 1902.*

1. Actions and defenses—*what makes a prima facie case in suit on a note.* In an action against sureties on a note, where the common counts and a special count are filed, the introduction of the note in evidence and proof of the signatures make a *prima facie* case for the plaintiff, and defendants have the burden of proving the want of consideration alleged in their plea.

2. Bills and notes—*forbearance from suit need not be for a definite time.* Forbearance from bringing suit on a note, in order to constitute good consideration for the signatures of sureties, need not be for a definite time, if it is understood that the debtor shall be, and is, indulged for a reasonable time.

3. Practice—*how to raise question that there was no sufficient proof of contract of forbearance.* In an action against sureties on a note, where the case is tried without a jury, if the defendants desire to preserve the question that there is not sufficient proof of the contract of forbearance claimed to constitute the consideration for the defendants' signatures or of the fact that knowledge of such contract was brought to the defendants, they should demur to the evidence, or present propositions of law to that effect, or move to find for the defendants.

*McMicken* v. *Safford,* 100 Ill. App. 102, affirmed.

Writ of Error to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kane county; the Hon. Henry B. Willis, Judge, presiding.

N. J. Aldrich, and Theodore Worcester, for plaintiffs in error.

Cheney & Evans, for defendant in error.

Mr. Justice Ricks delivered the opinion of the court:

This was a suit in assumpsit, brought to the May term, 1900, of the Kane circuit court, by Helen M. Safford, against William H. McMicken and Thomas D. McMicken, upon a promissory note. The note was for the principal sum of $1500, bore date March 13, 1892, matured one year thereafter, and was payable to the order of Helen M. Safford. It was originally signed by William McMicken and his wife, but after it became due, and after the death of the wife, their sons, William H. McMicken and Thomas D. McMicken, signed it, subscribing their names under those which the note then bore. The two original signers having died, this suit was brought to charge William H. and Thomas D. McMicken as guarantors. The *narr.* contained the common counts, and also a special count charging plaintiffs in error as guarantors. After averring the making of the note by William McMicken and his wife, R. McMicken, on March 13, 1892, it further averred that after the death of the wife, R. McMicken, and on the 17th day of January, 1896, the note being then due and unpaid, and the plaintiff pressing said William McMicken for payment and being about to bring suit for the collection, in consideration of the promise of the plaintiff to William McMicken, one of the makers of the note, "to forbear bringing suit thereon for a reasonable time thereafter, to-wit, for the space of one year, said defendants, T. D. and W. H. McMicken, did then and there enter into a joint and several undertaking and writing to pay said note according to the terms thereof, and did sign said note and deliver the same to plaintiff, and thereby promised," etc. To the declaration the defendants severally pleaded the general issue, and each also filed a special plea alleging a want of consideration for the signing of said note, in which they stated

that at the time they signed said note the same was long past due and there was no consideration for the same, and that it was.a mere naked promise from the defendants, without any consideration therefor. Upon these pleas issues were joined. A jury was waived, and there was a finding and judgment in favor of the plaintiff for the principal and interest of the note, amounting to $2266, which was affirmed by the Appellate Court. This writ of error was sued out by William H. McMicken, but Thomas D. McMicken assigns cross-errors identical with the errors assigned by the former.

It appears from the proof that William McMicken and his son Thomas D. were merchants in the city of Aurora, and on January 27, 1896, were in failing circumstances. On that day R. S. Safford, the husband and agent of Helen M. Safford, having heard that judgment had been entered against the firm of William McMicken & Son, called upon William McMicken at his store and told him that he (Safford) wanted something done in regard to that note. McMicken said he had plenty of means to pay it if he only had time. Safford said he would give all the time necessary, or any reasonable time, provided he was satisfied with the security, and asked the elder McMicken if his two sons would sign the note. Thereupon William McMicken had some conversation apart with his sons, William H. and Thomas D. McMicken, and they signed the original note under the signatures of the father and mother. William McMicken then delivered the note to Safford, who left the store. No further demand for the payment of the note was made for between three and four years, or until about sixty days before this suit was brought. No endorsement extending the note was made upon it, nor was there any fixed time agreed upon between William McMicken, the father, and Safford, to which it should be extended.

The questions open for the consideration of this court arise upon the giving and refusal of certain holdings

presented by the respective parties upon the trial, which plaintiffs in error chiefly rely upon.

It is first complained that the court granted defendant in error's first request, which is as follows:

"It is sufficient in this case for the plaintiff to prove a promise to forbear bringing suit upon the note in question for a reasonable time, in consideration of the undertaking of the elder McMicken to secure the signature on the said note of the two defendants and the actual return of the note to the plaintiff bearing the signatures of the defendants, and that she thereafterwards actually forbore to bring suit for such reasonable time. This makes out a *prima facie* case for the plaintiff and sufficiently supports the declaration to maintain a judgment, unless overcome by the testimony on the part of the defendants."

It is complained of this holding that it omits the element of knowledge of the consideration on the part of the plaintiffs in error, which they insist was necessary to a valid contract of guaranty after delivery. Defendant in error, to meet this contention, first urges that there was no defect in the holding, as contended for by plaintiffs in error; and next, that if there was it was cured by the holding of the second proposition on behalf of defendants, which was as follows:

"That in order to hold defendants in this suit, under the pleadings, it is incumbent upon the plaintiff to show, by a preponderance of the evidence, that the consideration relied upon for their contract was made known to or understood by them at the time of the said contract."

Under the state of the pleadings in this case we are disposed to hold that the first proposition given on the request of the defendant in error was correct. The declaration contained the common counts and also a special count, and the note relied upon was offered in evidence and the signatures of plaintiffs in error thereto proved. As we understand the practice that has obtained in suits upon such instruments, that made a *prima facie* case for

the defendant in error under the common counts, and if plaintiffs in error wished to rely upon their plea of want of consideration, they had a right to establish the facts alleged in their plea by evidence to be offered by them. (*Stacker* v. *Hewitt*, 1 Scam. 207; *Hoyt* v. *Jaffray*, 29 Ill. 104; *Mitchell* v. *Deeds*, 49 id. 416.) Such is, substantially, the effect of the holding complained of, and we are unable to say that it was not consonant with the general practice and law governing such suits. Plaintiffs in error, in their argument, seem to ignore the fact that the common counts were filed, and to discuss the case upon the theory that plaintiff below was bound to establish the averments of the special count as a part of her case in chief. Such would have been the requirement in the absence of the common counts. We think that the giving of the second holding asked by plaintiffs in error did not have a tendency to explain or in any practical degree affect the holding complained of, but did state more fully the law of the case according to the contention of the plaintiffs in error.

The next ground of error insisted upon is the refusal of the court to hold the refused proposition No. 1 offered by plaintiffs in error, which was:

"That to constitute a good consideration for a guaranty after the delivery of a note, a promise of forbearance must be definitely binding upon the party making it, so that the party to whom it is made may enforce it in case of breach. In this case, the promise testified to by plaintiff's witnesses did not constitute a binding contract which would have prevented immediate suit upon the note, and hence was not a good consideration for the guaranty."

We are unable to see any objection to this proposition in so far as it contains a statement of the law, or to understand why it was not given, unless the court took the view that "the promise testified to by plaintiff's witnesses" did "constitute a binding contract which

would have prevented immediate suit upon the note." This proposition is not subject to the objection or criticism that it calls upon the court to weigh the evidence of the witnesses on both sides and find a conclusion of fact from it, but is a request to construe the testimony of the plaintiff's witnesses alone, and to determine from that testimony whether the contract was such an one as was binding upon the parties. Upon that question but two witnesses testified on the part of defendant in error, namely, her husband, R. S. Safford, and her son, Fred F. Safford. Both testified that they went to the store of William McMicken and that he and the two defendants were in the store; that their conversation was had with William McMicken, the maker of the note. The husband, R. S. Safford, said: "I told the old gentleman I wanted something done in regard to that note. He said he did not want me to jump on him with the other creditors— that he had means to pay if he only had time. I told him that I would give him all the time that was necessary, or any reasonable time. He said if I would hold up he would have the boys sign the note. He took them to the back of the store and they talked a little while together; then William went back to the desk and got pen and ink and came back to the front, and they both signed the note." The son testified that he and his father went into the store and that only he and his father and William McMicken did any talking. He said: "We told him that we thought, under the circumstances, we should be protected on that note,—that he should give us some sort of protection. I said, 'Give us a judgment note.' He said, 'No, I won't do that; I have ample property, twice over, to protect all my creditors, and this thing is only of short duration; we are not closed up; we are not in the hands of the sheriff, and this will be fixed up in a few days; I have ample money to pay all my debts twice over.' The conversation continued, and finally we asked if he could get the two boys to sign the note,—Tom and Will. He

said he did not know. Then he took them to one side and talked to them, and there was considerable discussion. I do not know what was said, but Will went back to the store and got pen and ink and both signed the note. William McMicken, father and myself were there. He said that if we would give him time he would take care of it and that he would have the boys sign it. Father said he was willing to give him ample time, or reasonable time, if he could be satisfied that the note was secure."

The contention of plaintiffs in error seems to be that the contract proved by these witnesses is so indefinite as to time that it was not binding upon the parties, and there was nothing to prevent the holder of the note from suing upon it at any time after the making of the supposed contract of guaranty. Without expressly stating such to be their position, plaintiffs in error seem to contend that the evidence should show a fixed, definite time to which the extension of the debt or forbearance to sue should go. We have carefully gone over the authorities on this question and are satisfied that the rule does not require that the time shall be fixed. An understanding that the debtor shall be indulged for a reasonable time or shall be indulged generally, and an actual forbearance for a reasonable time, will be sufficient. (*Elting* v. *Vanderlyn,* 4 Johns. 237; *Traders' Nat. Bank* v. *Parker,* 130 N. Y. 421; 14 Am. & Eng. Ency. of Law,—2d ed.—1136, 1137.) While the plaintiffs in error technically argue that the language used by these parties in this conversation was not sufficiently exact to constitute an agreement of forbearance, we think the proper and natural inference to be derived from it was that Safford proposed that if McMicken would have his sons sign the note he would give him a reasonable extension of time and would forbear for a reasonable time to bring suit upon the note that was then due. They did sign the note and Safford did wait more than three years before bringing suit, which seems to bring the contract within the rule. We

are not, therefore, able to say that the court reached an erroneous conclusion as to the effect of this contract as established by this evidence, or that the refusal of the proposition asked was error.

The third proposition offered by plaintiffs in error and refused was similar to the first that we have discussed and involved the same question, and it is not necessary to further discuss it.

The second proposition was, that evidence of a promise to forbear upon condition that the party making the promise could be satisfied that the note was secured to him, is not sufficient proof of a promise to forbear to constitute a valid and binding contract without other proof to show that the one promising was so satisfied. This proposition was highly technical, and was predicated upon the peculiar language used by Fred F. Safford in speaking of getting the additional security on the note, which language was: "Father said he was willing to give him ample time, or reasonable time, if he could be satisfied that the note was secure." Plaintiffs in error insist that there was no expression by the husband of defendant in error, or by defendant in error herself, that she was satisfied with the additional security of the two plaintiffs in error signing the note, and that therefore there was no sufficient promise of forbearance. To have given this proposition could only have been justified by placing a strained construction upon the evidence, which the court was not required to do.

Refused propositions 4 and 5 asked for by plaintiffs in error were alike, except that the name of T. D. McMicken was used in one and William H. McMicken in the other, and were, that upon the contract of guaranty declared upon it was necessary for the plaintiff to prove a consideration for such guaranty distinct from the original consideration of the note, and in addition to prove that such consideration came to the knowledge of T. D. McMicken, and having failed to prove that T. D. Mc-

Micken knew of the consideration, the plaintiff cannot recover as against him. The difficulty with these propositions was, that they were asking the court to find, as a matter of fact, that there was no proof of knowledge on the part of plaintiffs in error of the contract under which they signed the note and became guarantors. These were not propositions offered at the close of the evidence of the plaintiff below or at the close of all the evidence, by which a question of law would be raised as to the sufficiency of the evidence generally, but only went to the particular matters covered by the propositions and are subject to the objection above suggested, for which reason the court did not err in refusing to give them.

Plaintiffs in error discuss this case as though it were upon peremptory instructions, and seem to take the view that this court ought to go into the evidence and review the action of the trial court, as upon the question of the sufficiency of the evidence to establish the contract of forbearance and to bring knowledge of that contract home to the plaintiffs in error. If the plaintiffs in error had desired to preserve the question whether the evidence, with all its reasonable intendments and inferences, wholly failed to establish a ground of action or right of recovery, upon the theory that there was no sufficient proof of a valid contract of forbearance or that knowledge of any such contract was brought to the plaintiffs in error, they should have preserved these questions, as questions of law, by a demurrer to the evidence, or by presenting propositions to be held, or upon motion to find for the defendants; (*Smith* v. *Billings*, 169 Ill. 294;) and not having done so, the judgment of the Appellate Court is final upon questions of fact involved, and we are not authorized to examine the evidence further than to enable us to pass upon the refused propositions or holdings.

Perceiving no error in the record the judgment of the Appellate Court is affirmed.     *Judgment affirmed.*