**Donald A. HORWITZ and Wesco Products Company, Plaintiffs,**

v.

**ALLOY AUTOMOTIVE COMPANY; Sheldon Gray; and Avrum Gray, Defendants.**

No. 84 C 10909.

United States District Court, N.D. Illinois, E.D.

March 23, 1987.

J. Barton Kalish, Kenneth W. Bley, Anthony V. Ponzio, John E. Geirum, J. Douglas Weingarten, Chicago, Ill., for plaintiffs.

Lionel G. Gross, Rex A. Logemann Altheimer & Gray, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Before this court is defendants' motion to dismiss Counts I–IV of plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted. Plaintiffs' complaint is based primarily on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1337, and 18 U.S.C. § 1964. For the reasons stated herein, defendants' motion is denied.

## FACTS

The following facts are alleged in plaintiffs' complaint. For purposes of this order they are considered to be true.

### 1. *Written Contract Between Parties*

Plaintiff Wesco Products Company (Wesco), an Illinois corporation, manufactured and sold automotive parts. Defendant Alloy Automotive Company (Alloy), an Illinois corporation, manufactures and sells automotive parts that are identical to the parts Wesco manufactured.

Prior to 1980, Wesco and Alloy had been direct competitors. In 1980, Wesco suffered financial problems and defaulted on loans made by Continental Bank of Illinois. Unable to restore its financial health, Wesco filed a petition for reorganization under Chapter 11 on October 10, 1980.

In March 1981, Wesco and Alloy entered into an agreement (1981 Agreement). Alloy agreed to purchase a portion of Wesco's assets and obtain a license from Wesco to use Wesco's trademark and trade name. In return, Alloy agreed to manage Wesco's daily operations. The bankruptcy court approved the 1981 Agreement.

### 2. *Bankruptcy Court*

Wesco commenced an adversary proceeding in the bankruptcy court against Alloy and Continental Bank on September 21, 1981. This action was consolidated with the original bankruptcy proceeding. Wesco voluntarily amended its adversary complaint in response to Alloy's motion to dismiss.

On February 3, 1982, Wesco filed an amended adversary complaint alleging breach of contract, breach of fiduciary duty, fraud, negligence, and conversion. Wesco contended Alloy committed the following acts: (1) caused Wesco to mail bulletins announcing the combination of the two companies; (2) compelled Wesco to purchase useless, unneeded products from Alloy; (3) sold goods to Wesco at prices higher than those normally charged to Alloy's customers; (4) compelled Wesco to pay unearned compensation to Alloy; (5) directed the discharge of numerous Wesco employees; and (6) misappropriated the Wesco trademark. The above acts were allegedly performed to gain control and domination over Wesco.

On June 3, 1982, the bankruptcy court granted Alloy's motion to dismiss the amended adversary complaint. The bankruptcy court concluded that Wesco failed to state a claim upon which relief can be granted under federal Rule 12(b)(6). The court reasoned that Wesco's amended complaint was insufficient since it was framed in a general and conclusory fashion. In addition, the court found that those claims based on fraudulent conduct were not pled with sufficient particularity as required by Rule 9(b).

Wesco filed a second amended adversary complaint. Wesco ceased doing business soon thereafter. Its assets were sold in the course of the bankruptcy proceedings. Consequently, on January 11, 1985, the bankruptcy court dismissed the underlying Chapter 11 proceeding because the debtor failed to file a plan of reorganization and the estate's only remaining asset was the

potential proceeds of the adversary proceeding itself. The remaining adversary proceeding was dismissed because it was rendered moot by the dismissal of the bankruptcy case.

### 3. *District Court*

On December 12, 1984, Wesco commenced the action before this court. After a hearing on defendants' motion to dismiss, Wesco voluntarily amended its complaint. This court granted defendants' revised motion to dismiss, but allowed plaintiffs to file a second amended complaint.

In the Second Amended Complaint, Wesco asserts both federal claims and pendent common law claims. Count I alleges RICO violations, 18 U.S.C. § 1962. Wesco seeks damages in Counts II, III, and IV under several common law theories: breach of contract, unjust enrichment, constructive trust, and resulting trust. In addition, Counts V and VI, the sufficiency of which Alloy does not contest, allege Trade Mark and Unfair Competition violations, 15 U.S.C. §§ 1114 and 1125(a). Finally, in Count VII, Wesco alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶¶ 262–272 and 311–317 and the Illinois Anti-Dilution Act, Ill.Rev.Stat. ch. 140, ¶ 22.

## DISCUSSION

■ On a motion to dismiss, the Federal Rules of Civil Procedure mandate that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the requested relief. Thus, this court will construe the complaint in the light most favorable to Wesco, the allegations thereof being taken as true. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977).

Alloy provides four grounds to support its motion to dismiss Counts I–IV: (1) the RICO count fails to state a claim; (2) the agreements which Alloy allegedly breached were unenforceable; (3) Wesco failed to plead fraud with sufficient particularity; and (4) the claims are time-barred, waived, or estopped. Alloy does not move to dismiss Counts V–VII. This court will discuss each count separately.

### A. *Count I—RICO*

Defendants move to dismiss plaintiffs' RICO claims. (Hereinafter plaintiffs will be referred to collectively as Wesco.) Defendants argue that Wesco failed to properly allege the predicate acts necessary to support a RICO claim. In addition, defendants contend that Wesco failed to plead a pattern of racketeering activity. Defendants also maintain that Wesco's RICO claim is time-barred.

In contrast, Wesco refutes defendants' motion to dismiss. Wesco reasons that this court previously held that defendants' RICO claims were successfully alleged. Therefore, this court should not reconsider a decision made prior to final judgment absent clear and convincing reasons to reexamine the prior ruling.

■ This court finds that Wesco properly pled their RICO claims in the Second Amended Complaint under § 1962(a) through (d). Wesco set forth the predicate acts and alleged the requisite pattern of racketeering activity required for each RICO claim.

Section 1964 of the Racketeer Influenced and Corrupt Organizations Act enables a private plaintiff to bring a civil rights suit based on a violation of Section 1962. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In the instant case, Wesco's RICO count attempts to state claims under Section 1962(a) through (d).

A violation of § 1962(a) requires the receipt of income from a pattern of racketeering, and the use of that income in the operation of an enterprise. *Masi v. Ford City Bank and Trust Co.*, 779 F.2d 397, 401 (7th Cir.1985). A violation of § 1962(b) requires a person engaging in a pattern of racketeering activity to acquire or maintain an interest in an enterprise engaged in interstate commerce. A § 1962(c) violation requires a person employed by an enterprise to participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. *Sedima, S.P.R.L. v.*

*Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Finally, a § 1962(d) violation requires a person to conspire to violate any subsection of § 1962. In all sections, a crucial element of the claim is the existence of a pattern of racketeering activity.

A pattern of racketeering activity requires at the barest minimum two predicate acts of racketeering activity. Wesco properly pled the predicate acts necessary to support an allegation that defendants engaged in a pattern of racketeering activity. Wesco specifically alleged acts of mail and wire fraud. Mail and wire fraud claims consist of two elements. The first element is a scheme to defraud. The second element is the use of the mails and wires in furtherance of the scheme to defraud. *Systems Research, Inc. v. Randon, Inc.,* 614 F.Supp. 494, 498 (N.D.Ill. 1985). In the instant case, Wesco satisfied both elements of mail and wire fraud. First, Wesco alleged the existence of a scheme to defraud. Second, Wesco articulated the alleged scheme in detail in the Second Amended Complaint. Finally, Wesco alleged that defendants used the mails and wires in furtherance of defendants' scheme to defraud.

Wesco also satisfied the requirements for pleading a pattern of racketeering activity. The Seventh Circuit set forth the pleading requirements in *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986). In *Morgan,* defendants made false representations which induced plaintiffs to invest money and pledge security in a speculative venture. The defendant bank agreed to lend money to the venture. In return, plaintiffs were persuaded to enter into a land trust agreement conveying a beneficial interest in their home to the bank. Two years later, when the venture defaulted, the individual defendants formed a new corporation and with the bank's consent purchased the initial venture's remaining assets. The same scenario was repeated two years later to form another new corporation. Mailings were made in connection with the initial loan arrangement and the creation of both corporations. When this third corporation failed, the defendant bank foreclosed on plaintiffs' home.

Plaintiffs instituted an action alleging a RICO violation. Defendants moved to dismiss for failure to plead a pattern of racketeering activity. The Seventh Circuit held that plaintiffs successfully alleged a pattern of racketeering activity. The *Morgan* court required the predicate acts to demonstrate "both a continuity and relationship in order to constitute a pattern of racketeering activity." The court ruled that the plaintiffs had satisfied this requirement.

The Seventh Circuit adopted a new legal test to determine the existence of a pattern of racketeering activity. This test has a fact-oriented standard. The "relationship" prong of the *Morgan* test requires the predicate acts to be committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. The "continuity" prong requires predicate acts to occur at different points in time or involve different victims. *Morgan* at 975. To be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions. *Id.*

This court believes Wesco satisfied the relationship prong of the *Morgan* test. The Seventh Circuit stated that relationship prong requires the predicate acts to be committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Wesco satisfies all three of these elements. First, the alleged acts of mail and wire fraud were all committed between September 1980 and May 1981. This eight-month time frame constitutes a sufficiently "close" time period. Second, Wesco never attempts to claim that anyone but the company, sole shareholder Donald A. Horwitz, and Wesco's employees were the intended victims. Finally, Wesco pleads that Alloy used the mail and wire system throughout this eight-month period to methodically defraud Wesco of its assets and customer base. Mail and wire fraud represent a similar type of misconduct. Therefore, Wesco successfully met the "relationship" prong.

This court also believes Wesco satisfied the continuity prong of the *Morgan* test. The *Morgan* court held the continuity prong requires the predicate acts to be ongoing over an identified period of time so that they can fairly be viewed as constituting transactions somewhat separated in time and place. The Seventh Circuit enunciated several relevant factors to evaluate continuity. These factors include the number and variety of predicate acts, the length of time over which these acts were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* at 975.

This court carefully considered the relevant factors. Wesco sufficiently alleged that defendants committed mail or wire fraud multiple times over an eight-month period. Wesco also claimed that these fraudulent acts varied from simple customer mailings to electronic wire transfers of Wesco's funds. Finally, Wesco alleged the existence of separate schemes (such as defendants calling Wesco's customers, or defendants electronically transferring funds from Wesco's to defendants' bank accounts) which led to the occurrence of distinct injuries. These injuries included the loss of Wesco's customer base and loss of various assets. In sum, this court finds that Wesco satisfied the continuity and relationship prongs of the *Morgan* test and properly pled a pattern of racketeering activity.

Next, defendants maintain that Wesco only pled one scheme. Defendants contend that one scheme can never be sufficient to establish a pattern of racketeering activity. The Seventh Circuit rejected this argument in *Morgan*. The *Morgan* court stated that "the proposition that the predicate acts must always occur as part of separate schemes ... cannot be accepted as a general rule." *Id.* at 975.

Finally, this court readdresses defendants' argument that Wesco's claim is time-barred. This court has already addressed this argument in its August 13, 1986 order. In that order, this court applied Federal Rule 15(c) and held Wesco's cause of action was timely filed within the applicable statute of limitations period.

For the above reasons, this court denies defendants' motion to dismiss Count I.

### B. *Breach of Contract*

Defendants also move to dismiss Wesco's Count II claim for bad faith breach of contract. In support of this motion, defendants argue that the two agreements upon which Wesco bases its allegations are unenforceable because a condition precedent has not been fulfilled. Defendants also argue that both agreements are unenforceable because they were superseded by a third agreement.

Wesco, on the other hand, reasons that defendants breached the 1980 agreement or in the alternative breached the January 1981 contract. In addition, Wesco claims that defendants prevented the fulfillment of the conditions precedent in the first two agreements. Finally, Wesco believes that the March 1981 agreement did not supersede the first two agreements.

This court finds that Wesco properly alleged a breach of contract claim. In its complaint, Wesco alleged the existence of the October 1980 and the January 1981 agreements. Wesco then pled in the alternative that one of these two agreements was breached. In claiming this breach, Wesco asserted that the nonperformance of the conditions precedent to these agreements should not render the contracts unenforceable since defendants' deliberate conduct caused the conditions not to be performed. Finally, Wesco correctly alleges that the March 1981 agreement failed to supersede the earlier agreements because the March 1981 agreement made no mention of the earlier agreements.

Wesco successfully alleges the existence of the October 1980 and the January 1981 agreements. Allegations demonstrating the existence of a contract must contain facts indicating an offer, acceptance, and consideration. *Martin-Trigona v. Bloomington Federal Savings & Loan Association*, 101 Ill.App.3d 943, 57 Ill.Dec. 348, 428 N.E.2d 1028 (1981). Since Wesco argues in the alternative, it must establish the exist-

ence of either the October 1980 agreement or the January 1981 agreement. Alloy does not contest the existence of the October 1980 agreement, the terms of which are fully set forth in the complaint. Wesco has, therefore, met its burden by showing that at least one contract existed between the parties. Wesco also established the existence of the 1981 agreement. Wesco claims that Alloy, through its agent Sheldon Gray, sent out an "important bulletin" on Wesco stationery to Wesco's customers on January 16, 1981. This bulletin stated that "on January 13, 1981, Wesco, Alloy and the major secured creditors arrived at an agreement...." This bulletin is signed by both Don Horwitz and Sheldon Gray, a plaintiff and a defendant. Where a party accepts and ratifies a written contract, even though it is not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound thereby. *Welsch v. Jakstas*, 401 Ill. 288, 82 N.E.2d 53 (1948). Defendants, acting through their agent Sheldon Gray, ratified the January 13, 1981 agreement. Wesco has, therefore, properly alleged the existence of the October 1980 and the January 1981 agreements.

Defendants inappropriately rely on the nonperformance of the conditions precedent to these alleged agreements to render the agreement unenforceable. Wesco successfully pled that this failure was deliberately caused by defendants' conduct. A party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability. *Yale Development Co., Inc. v. Oak Park Trust & Savings Bank*, 26 Ill.App.3d 1015, 325 N.E.2d 418 (1975). In the instant case, the agreements allegedly included a condition precedent that Wesco file a plan of reorganization with the bankruptcy court. Wesco claims that defendants were in virtual control of Wesco during this time and therefore defendants' conduct precluded such a filing with the bankruptcy court. Complaint Count II, par. 28 at pp. 40–42, and pars. 37–39 at pp. 49–51. Wesco's allega-

tions are sufficient to carry its burden in pleading that defendants prevented Wesco from fulfilling the condition precedent. Consequently, the nonperformance of the conditions precedent do not render the contracts unenforceable.

Finally, Wesco alleges that the March 1981 agreement failed to supersede the earlier agreements. Wesco claims that the parties to the March 1981 contract were not the same as those involved in the earlier agreements and thus could not supersede a prior contract. The March 1981 contract was signed by Avrum Gray for defendants, Continental Bank, and by an illegible name for Wesco with "Designated Party for the D.I.P. (Debtor-in-Possession)" printed after it. No contract can be modified by one of the contracting parties without the knowledge and consent of the remaining parties to the agreement. *People ex rel. Sterba v. Blaser*, 33 Ill.App.3d 1, 337 N.E.2d 410 (1975). Whether defendant had sufficient control over Wesco at that time to cause it to be a party to this contract is a question which this court reserves for a later motion. Next, Wesco points out that the March 1981 agreement makes no mention of superseding the earlier agreements. There is a specific clause to this effect contained in the January 1981 agreement. It is not the practice of this court to interfere with parties' freedom to contract. If they had agreed that the March 1981 agreement supersedes prior agreements, this court assumes that they would have inserted a clause to this effect into the agreement. Therefore, Wesco properly pled that the March 1981 agreement did not supersede the earlier agreements. This court finds that Wesco successfully alleged that defendants breached various contracts between the parties.

### C. *Constructive Trust and Resulting Trust*

Defendants move to dismiss the Count III constructive trust claim and the Count IV resulting trust claim. Defendants assert that neither trust theory is sufficient since Wesco failed to show that defendants had a fiduciary relationship with Wesco.

Wesco refutes this by claiming defendants had a fiduciary relationship with Wesco resulting in defendants owing a fiduciary duty to Wesco. Wesco believes that a constructive trust is imposed to prevent a person from holding for his own benefit an advantage he has gained by reason of a fiduciary relationship or by fraud.

The Illinois Supreme Court set forth two classes of constructive trusts in *Charles Hester Enterprises v. Illinois Founders Insurance,* 137 Ill.App.3d 84, 91 Ill.Dec. 790, 484 N.E.2d 349 (1985). The Supreme Court held that constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust; and the other where there exists a fiduciary relationship and a subsequent abuse of such relationship. *Id.,* 91 Ill.Dec. at 795, 484 N.E.2d at 354.

■ This court holds that Wesco has sufficiently alleged the existence of a constructive trust. Count III of the Second Amended Complaint alleges multiple acts of fraud and a breach of defendants' fiduciary duty. The acts of fraud were identified in detail in Count III. Moreover, paragraph 51 of Count III specifically alleged defendants breached their fiduciary duty to Wesco. This count is sufficient in law to state a cause of action against defendants.

Defendants support their motion to dismiss Count IV's resulting trust claim based on the premise that no fiduciary relationship exists between Wesco and defendants. This court has already found that Wesco sufficiently pled the existence of a fiduciary relationship in its discussion of Count III. Therefore, defendants' argument is meritless.

As a final note, this court considers defendants' allegation that Wesco's constructive trust and restrictive trust claims are barred by the doctrine of laches and estoppel. Defendants' assertion of these doctrines is essentially a restatement of its earlier statute of limitations argument asserted against Wesco's RICO claims. Therefore, this court has repeatedly addressed this issue and considers defendants' arguments warrantless.

CONCLUSION

For the foregoing reasons, this court denies defendants' motion to dismiss Counts I–IV of Wesco's Second Amended Complaint.

IT IS SO ORDERED.